# United States Court of Appeals

## For the Eleventh Circuit

No. 07-12235

District Court Docket No.
5 : 06-00220-CV-OC-10-GRJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 19. 2008

THOMAS K. KAHN
CLERK

MARIA D. GARCIA.
as surviving Spouse, as Administrator and
Personal Representative of the Estate of
Jose Garcia, and on behalf of her minor children
Garbiela Garcia and Luis Garcia,

Plaintiff-Cross-Defendant-Appellant.

SANTOS RUIZ,
individually, and as administrator and personal
representative of the Estate of Nelson Ruiz. and
on behalf of and as legal guardian of the minor
Nelson Xavier Ruiz, et al.,

Plaintiffs,

versus

VANGUARD CAR RENTAL USA, INC..
a Deleware corporation,
NATIONAL RENTAL (US). INC.,
a Delaware corporation, f.k.a. National
Car Rental,
ALAMO FINANCING, L.P..
a foreign limited partnership,
ALAMO RENT-A-CAR (CANADA) INC.,
a Florida corporation. et. al.,

Defendants-Cross-
Plaintiffs-Appellees.

VANGUARD RENTAL (BELGIUM), INC.,
a Florida corporation, et. al.,

Defendants-Appellees.

UNITED STATES OF AMERICA,

Intervenor,

A True Copy - Attested
Clerk U.S. Court of Appeals.
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

GREGORY DAVIS, et al.,

                Defendants.

------------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

------------------------------------------------------------------

J U D G M E N T

    It is hereby ordered. adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:    August 19. 2008
For the Court:    Thomas K. Kahn, Clerk
      By:    Gilman. Nancy

ISSUED AS MANDATE

SEP 1 7 2008

U.S. COURT OF APPEALS
ATLANTA, GA.

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

| FILED |
| U.S. COURT OF APPEALS |
| ELEVENTH CIRCUIT |
| AUGUST 19, 2008 |
| THOMAS K. KAHN |
| CLERK |

No. 07-12235

D. C. Docket No. 06-00220-CV-OC-10-GRJ

MARIA D. GARCIA,
as surviving Spouse, as Administrator and
Personal Representative of the Estate of
Jose Garcia, and on behalf of her minor children
Gabriela Garcia and Luis Garcia,

Plaintiff-Cross-Defendant-Appellant,

SANTOS RUIZ,
individually, and as administrator and personal
representative of the Estate of Nelson Ruiz, and
on behalf of and as legal guardian of the minor
Nelson Xavier Ruiz, et al.,

Plaintiffs,

versus

VANGUARD CAR RENTAL USA, INC.,
a Delaware corporation,
NATIONAL RENTAL (US), INC.,
a Delaware corporation, f.k.a. National
Car Rental,
ALAMO FINANCING, L.P.,
a foreign limited partnership,
ALAMO RENT-A-CAR (CANADA) INC.,
a Florida corporation, et. al.,

Defendants-Cross-Plaintiffs-Appellees.

VANGUARD RENTAL (BELGIUM), INC.,
a Florida corporation. et. al.,

Defendants-Appellees,

UNITED STATES OF AMERICA,

Intervenor.

GREGORY DAVIS, et al.,

Defendants.

---

Appeal from the United States District Court
for the Middle District of Florida

---

**(August 19, 2008)**

Before EDMONDSON, Chief Judge, KRAVITCH and ALARCÓN,* Circuit
Judges.

KRAVITCH, Circuit Judge:

These consolidated declaratory judgment and wrongful death actions require

us to interpret the Graves Amendment, 49 U.S.C. § 30106, a federal tort reform

statute which purports to shield rental car companies from certain vicarious

liability suits.  We conclude that the tort claims at issue are within the

---

* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

2

Amendment's preemption clause and not within its savings clause.  We further

conclude the statute is within Congress's Article I powers.  Accordingly, we affirm

the grant of summary judgment in favor of the rental car companies.

## I.

The pertinent facts are undisputed.  The appellee rental car companies[1]

leased a car to Gregory Davis on February 2, 2005.  They were not negligent or

otherwise at fault in so doing.  Davis rented the car in Orlando, Florida and drove it

north towards Georgia.  The record does not establish whether Davis embarked on

his trip intending for it to be an interstate journey.  On the trip, Davis was involved

in a three-car accident in Marion County, Florida, for which he was allegedly at

fault.  The collision caused the deaths of Jose Garcia, appellant's decedent, and

Nelson Ruiz, whose estate was a party in the district court but has not appealed.

Israel Lopez was also severely injured, but fortunately was not killed.

Anticipating a suit alleging vicarious liability for Davis' negligence,

Vanguard filed a declaratory judgment action in the district court against Lopez

and the estates and surviving spouses of Garcia and Ruiz.  Jurisdiction was based

on diversity.  The Vanguard companies sought a declaration that the Graves

Amendment preempted any claims against them for wrongful death or bodily

---

[1] The appellees, referred to as Vanguard hereafter, own interests in the rental car at issue.

3

injury caused by their lessee Davis. The estates and surviving spouses of Garcia and Ruiz then filed separate wrongful death actions in Florida state court. The state court actions were removed and consolidated with the declaratory judgment action, and the district court dismissed several corporate parties it found were fraudulently joined to defeat diversity jurisdiction. On cross-motions for summary judgment, the district court issued a thorough and well-written opinion holding that the Graves Amendment validly preempted all the tort claims, and thus, it granted summary judgment for the rental car companies in all three cases. This appeal ensued.

## II.

We must first determine whether the Graves Amendment, by its terms, preempts these wrongful death actions. Of course, a valid federal statute preempts any state law with which it actually conflicts. See, e.g., Foley v. Luster, 249 F.3d 1281, 1286 (11th Cir. 2001).

These suits were brought against Vanguard, which concededly was not culpable in renting a car to Davis, because of the so-called dangerous instrumentality doctrine. Through that doctrine, Florida common law "imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to

4

another." <u>Aurbach v. Gallina</u>, 753 So. 2d 60, 62 (Fla. 2000) (citing <u>Southern</u>

<u>Cotton Oil Co. v. Anderson</u>, 86 So. 2d 629, 637 (Fla. 1920)).  The doctrine applies

to commercial motor vehicle lessors such as Vanguard.

In 1999, the Florida legislature imposed statutory caps on the amount of

vicarious liability rental car companies could face under the dangerous

instrumentality doctrine.  As pertinent here, the statute provides that

> The lessor, under an agreement to rent or lease a motor vehicle for a
> period of less than 1 year, shall be deemed the owner of the vehicle
> for the purpose of determining liability for the operation of the vehicle
> or the acts of the operator in connection therewith only up to $100,000
> per person and up to $300,000 per incident for bodily injury and up to
> $50,000 for property damage.  If the lessee or operator of the vehicle
> is uninsured or has any insurance with limits less than $500,000
> combined property damage and bodily injury liability, the lessor shall
> be liable for up to an additional $500,000 in economic damages only
> arising out of the use of the motor vehicle.

Fla. Stat. § 324.021(9)(b)(2).  Thus, the statute explicitly countenances the type of

lawsuits at issue here – those imposing strict liability against a rental car company

for the negligent acts of its lessee – while imposing a damages cap on them.  It also

reduces the rental company's liability exposure if a lessee is insured for $500,000

or more.

The Graves Amendment takes aim at precisely these types of lawsuits.  The

Amendment has two operative provisions, a preemption clause and a savings

clause.  The preemption clause provides as follows:

5

> An owner of a motor vehicle that rents or leases the vehicle to a
> person (or an affiliate of the owner) shall not be liable under the law
> of any State or political subdivision thereof by reason of being the
> owner of the vehicle (or an affiliate of the owner) for harm to persons
> or property that results or arises out of the use, operation, or
> possession of the vehicle during the period of the rental or lease, if (1)
> the owner (or an affiliate of the owner) is engaged in the trade or
> business of renting or leasing motor vehicles, and (2) there is no
> negligence or criminal wrongdoing on the part of the owner (or an
> affiliate of the owner).

49 U.S.C. § 30106(a). The instant wrongful death claims are clearly within the

scope of this provision. Vanguard and its affiliates are in the rental car business.

Vanguard owned the rental car driven by Davis and leased it to him, and the

accident occurred during the lease period. Plaintiffs seek to recover solely under a

vicarious liability theory: Vanguard is allegedly liable "by reason of being the

owner of the vehicle" negligently driven by Davis, not because of any negligent

entrustment or other wrongdoing of its own. Thus, assuming for now that the

statute is constitutional, these wrongful death suits are preempted by § 30106(a)

unless they are within the statute's savings clause. It provides that

> Nothing in this section supersedes the law of any state or political
> subdivision thereof –
> (1) imposing financial responsibility or insurance standards on the
> owner of a motor vehicle for the privilege of registering and operating
> a motor vehicle; or
> (2) imposing liability on business entities engaged in the trade or
> business of renting or leasing motor vehicles for failure to meet the
> financial responsibility or liability insurance requirements under state
> law.

6

49 U.S.C. § 30106(b).  Appellants contend their suits are within the savings clause

because Florida's imposition of vicarious liability on rental car companies for the

negligence of their lessees is a financial responsibility law.  To evaluate this

argument, we must review the pertinent law of statutory interpretation.

The Graves Amendment does not define the term "financial responsibility."

When statutory terms are undefined, we typically infer that Congress intended

them to have their common and ordinary meaning, unless it is apparent from

context that the disputed term is a term of art.  Konikov v. Orange Cty, Fla., 410

F.3d 1317, 1329 (11th Cir. 2005) (citation omitted).  When Congress employs a

term of art, it presumptively adopts the meaning and "cluster of ideas" that the

term has accumulated over time.  Medical Transport Mgmt. Corp v. Comm'r,

Internal Revenue Service, 506 F.3d 1364, 1368-69 (11th Cir. 2007) (citations

omitted).  In construing an ambiguous statute, we also employ canons of

construction which embody sound generalizations about Congressional intent.

One such canon is *noscitur a sociis*, which is the commonsense principle that

statutory terms, ambiguous when considered alone, should be given related

meaning when grouped together.  See, e.g, S.D. Warren Co. v. Maine Bd. Of Env.

Protection, 547 U.S. 370, 378 (2006) (citations omitted).  By construing proximate

statutory terms in light of one another, courts avoid giving "unintended breadth to

7

the acts of Congress." Gustafson v. Alloyd Co. Inc., 513 U.S. 561, 575 (1995)

(quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961)).  Another

pertinent canon is the presumption against surplusage: we strive to give effect to

every word and provision in a statute when possible.  Lowery v. Alabama Power

Co., 483 F.3d 1184, 1204 (11th Cir. 2007) (citations omitted).  In addition to

canons of construction, we may turn to legislative history as an interpretive aid.

We may consult legislative history to elucidate a statute's ambiguous or vague

terms, but legislative history cannot be used to contradict unambiguous statutory

text or to read an ambiguity into a statute which is otherwise clear on its face.  Id.

at 1205 (citations omitted).  Moreover, when we consult legislative history, we do

so with due regard for its well-known limitations and dangers.  See Exxon Mobil

Corp v. Allapattah Svcs., Inc., 545 U.S. 546, 568-70 (2005) (discussing potential

pitfalls in employing legislative history).

    With these interpretive principles in mind, we conclude that Congress used

the term "financial responsibility law" to denote state laws which impose

insurance-like requirements on owners or operators of motor vehicles, but permit

them to carry, in lieu of liability insurance per se, its financial equivalent, such as a

bond or self-insurance.[2]  First, statutory context and the *noscitur a sociis* canon

---

[2] Such duties may arise as a condition of licensing or registration, or, as in Florida, after a
motorist has been involved in an accident.  See Fla. Stat. § 324.011: see also Lynch-Davidson

suggest as much.  Both provisions of the savings clause strongly imply that financial responsibility is closely linked to insurance requirements: the savings clause exempts from preemption laws "imposing financial responsibility or insurance standards," § 30106(b)(1), or laws penalizing the "failure to meet the financial responsibility or liability insurance requirements under state law." § 30106(b)(2).  This pairing of terms strongly suggests that "financial responsibility" refers to insurance-like requirements.

Second, the most common legal usage of the term "financial responsibility" is to refer to state laws which require either liability insurance or a functionally equivalent financial arrangement.  Florida law is representative in providing that the owner of a motor vehicle "may prove his or her financial responsibility" by furnishing proof of liability insurance, posting a bond, furnishing a certificate showing a deposit of cash or securities, or furnishing a certificate of self-insurance. Fla. Stat. § 324.031.  These other financial arrangements, like insurance, provide "proof of ability to respond in damages on account of crashes arising out the use of a motor vehicle," which is Florida law's definition of "proof of financial responsibility."  See Fla. Stat. § 324.021(7).  Appellant provides no reason for us to believe Florida law is exceptional in so defining financial responsibility.  Likewise,

---

Motors v. Griffin, 182 So.2d 7. 8 (Fla. 1966).

9

Black's Law Dictionary defines financial responsibility only to include

requirements that motorists have proof of "insurance or other financial

accountability." See Black's Law Dictionary at 663 (8th ed. 2004). Again, we see

the ubiquitous association of "financial responsibility" with insurance

requirements. An insurance treatise relied upon by appellants suggests a similar

meaning to Black's, but also notes that "financial responsibility" laws may be used

to refer to statutes which suspend a motorist's license or vehicle registration if they

fail to satisfy a judgment resulting from an accident. 15 Russ & Segalla, *Couch on*

*Insurance*, §§ 109:34, 109:45-46. Appellants seize on this definition and urge that

Florida's vicarious liability regime is therefore part of a financial responsibility

scheme: it gives rise to judgments against lessors, which they must pay on pain of

cancelled registration. See Fla. Stat § 324.121 (suspension of license or

registration upon notice of an unsatisfied judgment). Therefore, appellants argue,

vicarious liability is part of the financial responsibility laws.

This argument is unpersuasive because it runs afoul of the presumption

against surplusage. If we construe the Graves Amendment's savings clause as

appellants wish, it would render the preemption clause a nullity. Every vicarious

liability suit would be rescued because it could result in a judgment in favor of an

accident victim, even though the judgment is premised on the very vicarious

10

liability the Amendment seeks to eliminate. The exception would swallow the rule. We will not choose such an interpretation when another one is feasible. Appellants protest that their reading would not render the preemption clause superfluous because regimes like Fla. Stat. § 324.021(9)(b)(1)-(2), which cap the amount of vicarious liability damages, would be preserved, while uncapped damages would be preempted. In support, they cite statements from the Amendment's legislative history, where its sponsors express concern with "unlimited" vicarious liability. See 151 Cong. Rec. H1034-01 at 1201 (Statement of Rep. Boucher); id. at 1202 (Statement of Rep. Graves). Yet read in context, the statements expressing concern with unlimited vicarious liability do not manifest any approval, explicit or implicit, of limited vicarious liability. More importantly, we see no textual support in the Graves Amendment itself for such a distinction. The distinction Congress drew is between liability based on the companies' own negligence and that of their lessees, not between limited and unlimited vicarious liability.

Appellants also argue that we should construe Florida's vicarious liability regime as a financial responsibility law to serve statutory and public policy goals. They urge that Fla. Stat. § 324.021(9)(b)(2) is a financial responsibility law because it induces car rental companies to ensure that their lessees are adequately

11

insured, thereby serving the purpose of the financial responsibility laws, ensuring

compensation for accident victims.  The Florida statute achieves this purpose by

reducing the companies' liability exposure if their lessees meet the statutory

minimum requirements for liability insurance or other financial responsibility.  But

not every inducement to lease only to the insured thereby becomes a financial

responsibility law.  As explained above, financial responsibility laws are legal

requirements, not mere financial inducements imposed by law.  Moreover, the

inducement appellants rely upon is again premised upon the very vicarious liability

the Graves Amendment seeks to eliminate.  This argument, too, fails to convince

us that imposition of vicarious liability is within the Amendment's savings clause.

In sum, neither the common law imposition of vicarious liability on rental

car companies, nor the Florida legislature's endorsement of and limitations on such

vicarious liability, constitutes a "financial responsibility" requirement.  To the

contrary, the import of the Graves Amendment is clear.  States may require

insurance or its equivalent as a condition of licensing or registration, or may

impose such a requirement after an accident or unpaid judgment.  49 U.S.C. §

30106(b)(1).  They may suspend the license and registration of, or otherwise

penalize, a car owner who fails to meet the requirement, or who fails to pay a

judgment resulting from a collision.  49 U.S.C. § 30106(b)(2).  They simply may

12

not impose such judgments against rental car companies based on the negligence of their lessees.  49 U.S.C. § 30106(a).

### III.

Because the Graves Amendment purports to preempt this lawsuit, we must next determine its constitutionality.  Appellants contend the statute cannot be applied to preempt their suits because it is outside Congress's commerce powers.

The commerce power – that is, the combination of the Commerce Clause per se and the Necessary and Proper Clause – encompasses authority to regulate three categories of activities.  The first is the use of the "channels" of interstate commerce, the "interstate transportation routes through which persons and goods move."  See, e.g, United States v. Ballinger, 395 F.3d 1218, 1225 (11th Cir. 2005) (en banc) (citations omitted).  It is clear that the Amendment does not directly regulate the channels of commerce nor their use.  Neither the rental car market, nor the imposition of vicarious liability on rental car firms, are in any respect a regulation of roads as such.  Nor is the Graves Amendment an effort to protect roads from harm, nor to prevent them from being used for harmful purposes.  See id. at 1226.

Second, Congress may regulate the so-called "instrumentalities" of commerce.  This category includes at a minimum "persons and things themselves

13

moving in interstate commerce." Ballinger, 395 F.3d at 1226. And Ballinger arguably suggests, without explicitly stating, that persons and things moving in interstate commerce is the full extent of the instrumentalities category. But there is also some authority for the proposition that methods of interstate transportation and communication are per se instrumentalities of commerce, regardless of whether the car (or the like) at issue in a particular case has crossed state boundaries or is otherwise engaged in interstate commerce.[3] If cars are per se instrumentalities of commerce, even when not employed in interstate commerce, this is an easy case. Congress may protect instrumentalities of commerce from purely intrastate threats and burdens, United States v. Lopez, 514 U.S. 549, 558 (1995), and there is no authority prohibiting preemption of burdensome state laws as a means of doing so.

But the implications of this argument give us reason to doubt its premise. If cars are always instrumentalities of commerce, as suggested by Bishop, Congress would have plenary power not only over the commercial rental car market, but

---

[3] See, e.g., United States v. Pipkins, 378 F.3d 1281, 1295 (11th Cir. 2004) (suggesting pagers, telephones, and the Internet are per se instrumentalities of commerce, regardless of whether any interstate communications or routing occur), vacated and remanded on other grounds, 544 U.S. 902 (2005), opinion reinstated on remand 412 F.3d 1251 (11th Cir. 2005). See also United States v. Bishop, 66 F.3d 569, 589-90 (3rd Cir. 1995) (Congress may criminalize intrastate carjackings because cars are per se instrumentalities of commerce); United States v. Oliver, 60 F.3d 547, 550 (9th Cir. 1995) (same). See also United States v. Williams, 51 F.3d 1004 (11th Cir. 1995), abrogated in part on other grounds, Jones v. United States, 526 U.S. 227 (1999) and United States v. Hutchinson, 75 F.3d 626 (11th Cir. 1996) (both summarily concluding that federal carjacking statute is constitutional notwithstanding Lopez).

14

over many aspects of automobile use.  See, e.g., United States v. Hornaday, 392

F.3d 1306, 1311 (11th Cir. 2004) (Commerce Clause power is plenary within its

scope).  Further, because such power would derive from the Commerce Clause per

se, Congress could exercise even broader power to make laws necessary and

proper to effectuate its plenary power over automobiles including, presumably,

regulation of such quintessentially state law matters as traffic rules and licensing

drivers, under the banner of protecting the instrumentalities of commerce.  We

have our doubts about an interpretation which produces these results, which makes

us suspect the premise that all methods of transportation and communication are

per se instrumentalities of commerce even when they are not used in interstate

commerce.  Moreover, there is sensible authority that channels and

instrumentalities of commerce refer only to "the ingredients of interstate commerce

itself."  Gonzalez v. Raich, 545 U.S. 1, 34 (2005) (Scalia, J., concurring in the

judgment) (citing Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 189-90 (1824)); see

also Bishop, 66 F.3d at 597-600 (Becker, J., dissenting) (automobiles can be used

as instrumentalities of commerce, but are not per se instrumentalities subject to

plenary federal regulation).

Congress has very broad power to regulate wholly intrastate uses of the

means of interstate transportation and communication.  But it appears more likely

15

that such authority derives not from their status as instrumentalities, but from the Necessary and Proper Clause.[4]  The distinction is not academic; although we ultimately would reach the same result under Lopez prongs two or three, the reasons for the outcome would differ markedly.  Should we recognize rental cars as per se instrumentalities of commerce, as appellees and the United States' *amicus* brief would have us do, our analysis ends with the recognition that Congress may protect instrumentalities of commerce from intrastate threats and burdens.  In contrast, if rental cars are not per se instrumentalities of commerce, and the statute does not restrict its application to suits involving rental cars that are instrumentalities, *i.e.* "in commerce," then we must analyze the statute as regulating an activity "affecting commerce," and as we shall see, the precedent grows thinner.  Given the dubious implications of construing all automobiles as per se instrumentalities of commerce, we will pass over that question; the more prudent course is for us to decide the Graves Amendment's constitutionality under the third Commerce Clause prong.

The final and most hotly contested facet of the commerce power is the

_____

[4] Compare Bishop and Pipkins, supra, with Heart of Atlanta Motel Inc. v. United States, 379 U.S. 241, 271 (1964) (Black, J., concurring) (power to regulate intrastate use of instrumentalities because such uses burden commerce derives from Necessary and Proper Clause), and Raich, 545 U.S. at 34 (Scalia, J., concurring in the judgment) (power to regulate activities that are not actually in interstate commerce must derive from Necessary and Proper Clause).

16

authority to regulate purely intrastate activities when they "substantially affect" or have a "substantial relation to" interstate commerce. Ballinger, 395 F.3d at 1226 (citations omitted). "When economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." Raich v. Gonzales, 545 U.S. at 25 (citing United States v. Morrison, 529 U.S. 598, 610 (2000)). One implication of this principle is that where Congress comprehensively regulates the national market for a particular good or activity, courts may not pronounce particular intrastate instances of the regulated conduct to have a de minimis effect on the market and therefore to be outside the commerce power. Id. at 17-19 (citing, inter alia, Wickard v. Filburn, 317 U.S. 111 (1942)). This approach to the third prong of commerce jurisprudence, embodied most dramatically by Raich and Wickard, is commonly described as "aggregation": when the aggregate effects of an economic activity substantially affect interstate commerce, Congress may regulate both interstate and intrastate instances of that activity, the latter being necessary and proper to effective regulation of the former.

Yet the Supreme Court has made clear that aggregation analysis is not always appropriate. In the seminal cases of United States v. Morrison, 529 U.S. 598 (2000) and United States v. Lopez, 514 U.S. 549 (1995), the Supreme Court refused to validate the Violence Against Women Act and the Gun-Free School

Zones Act, respectively, because of the purported aggregate effects of gender-motivated violence and school violence on interstate commerce. Rather, in considering the permissibility of those statutes under the commerce power, the Court focused on four "significant considerations": (i) whether the activity regulated was economic in nature, (ii) whether the statute contained jurisdictionally limiting language, (iii) whether Congress made findings concerning the effect of the regulated activity on commerce, and (iv) whether the connection between the regulated activity and an effect on commerce is attenuated. Morrison, 529 U.S. at 609-617 (citations omitted). The upshot of Morrison and Lopez is that Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." Id. at 617. In practice, review under the "significant considerations" of Lopez and Morrison is significantly less deferential than under aggregation analysis. Under the latter, Congress need only have a rational basis for concluding that the regulated activities, in the aggregate, substantially affect interstate commerce. Raich, 545 U.S. at 22 (citations omitted).

Appellants argue that the test elaborated in Morrison and Lopez, rather than that in Raich, should be applied when, as here, we analyze a single subject statute rather than a comprehensive regulatory regime. They rely chiefly on United States v. Maxwell, 446 F.3d 1210, 1214 (11th Cir. 2006), where we stated that the salient

18

difference between Lopez and Raich was "the comprehensiveness of the economic component of the regulation." (We also noted the possibility for analytic confusion after Morrison and Raich.  Id. at 1216 n.6)  Appellants urge that analysis under the Morrison/Lopez factors is appropriate because the Graves Amendment, like the statute at issue in those cases, is a "brief, single-subject statute," with no statutory element requiring proof that particular instances of vicarious liability "have any connection to past interstate activity or a predictable impact on future commercial activity."  See Raich, 545 U.S. at 23.

Despite its brevity, we believe the Graves Amendment is properly analyzed under the aggregation doctrine of Raich, rather than the considerations elaborated in Morrison and Lopez.  Raich makes clear that when a statute regulates economic or commercial activity, Lopez and Morrison are inapposite.  Instead, when an economic activity has a substantial effect on interstate commerce, regulation of that activity must be sustained.  Raich, 545 U.S. at 25.  There is no question that the commercial leasing of cars is, in the aggregate, an economic activity with substantial effects on interstate commerce.  This is true both because of the size and national scope of the industry, and because rental cars are frequently (though perhaps not uniformly) employed as instrumentalities of interstate commerce.

Appellants protest that the Graves Amendment does not regulate the rental

19

car market at all, but state tort law.  This is a distinction without a difference, as the

state tort law preempted by the statute regulates the rental car market; in other

words, the effect of the statute is to deregulate the rental car market.  And it has

long been understood that the commerce power includes not only the ability to

regulate interstate markets, but the ability to facilitate interstate commerce by

removing intrastate burdens and obstructions to it.  See, e.g., NLRB v. Jones &

Laughlin Steel Corp., 301 U.S. 1, 31-32 (1937).  On this theory, the Graves

Amendment protects the rental car market by deregulating it, eliminating state-

imposed laws and lawsuits Congress reasonably believed to be a burden on an

economic activity with substantial effects on commerce.  Such a theory is

relatively novel, but only because statutes like the Graves Amendment are novel.

Many federal statutes expressly or impliedly preempt state tort law as an incident

to federal regulation.  But we are aware of only one other statute with the sole

effect and purpose of preempting state-law claims because Congress believed them

to be a burden on an interstate market.  That is the Protection of Lawful Commerce

in Arms Act, 15 U.S.C. §§ 7901-7903, which preempts certain tort suits against

gun manufacturers.  Despite the novelty of laws like the Graves Amendment and

PLCAA, there is no reason in principle why state laws or lawsuits cannot

20

themselves constitute a burden on interstate commerce.[5]  Indeed, the PLCAA

recently survived a Commerce Clause challenge for essentially the reasons

explained above: the interstate character of the firearms industry, coupled with the

perceived threat to that industry posed by state lawsuits, justified use of the

commerce power to preempt the burdensome suits.  City of New York v. Beretta

USA Corp., 524 F.3d 384 (2nd Cir. 2008).  The two cases are not identical because

unlike the Graves Amendment, the PLCAA limits its preemptive effect to suits

involving guns in interstate commerce.  Id. at 394.  But we do not think that

distinction matters.  Congress may foster and protect the entire market for rental

cars because, in the aggregate, that market substantially affects interstate

commerce.  So long as the underlying economic activity the federal statute aims to

protect is within the commerce power, we will not second guess Congress's

decision that preemption is an appropriate means to achieve proper ends.  Rather,

Congress may choose any "means reasonably adapted to the attainment of the

suited end, even though they involved control of intrastate activities."  United

States v. Darby, 312 U.S. 100, 121 (1941).  For regulation (or deregulation) of

---

[5] For example, the entire premise of dormant Commerce Clause jurisprudence is that state laws favoring in-state economic interests over those of out-of-state competitors can burden interstate commerce.  See, e.g. Dept. of Revenue of Kentucky v. Davis, __ U.S. __, 128 S.Ct. 1801, 1808 (2008) (citations omitted).  We do not suggest that vicarious liability against rental car companies is a form of in-state protectionism; we merely note that state laws, no less than private practices, may burden interstate commerce.

21

intrastate activities to survive review under aggregation analysis, Congress need

only have a rational basis for concluding that the intrastate activity would

undermine the lawful Commerce Clause goals of a federal statute if left untouched.

See Raich, 545 U.S. at 19.

These principles indicate that the Graves Amendment is valid. It is plain

that the rental car market has a substantial effect on interstate commerce. It is also

apparent that Congress rationally could have perceived strict vicarious liability for

the acts of lessees as a burden on that market.[6] The reason it could have done so is

that the costs of strict vicarious liability against rental car companies are borne by

someone, most likely the customers, owners, and creditors of rental car companies.

If *any* costs are passed on to customers, rental cars – a product which substantially

affects commerce and which is frequently an instrumentality of commerce –

become more expensive, and interstate commerce is thereby inhibited. Moreover,

if significant costs from vicarious liability are passed on to the owners of rental car

firms, it is possible that such liability contributes to driving less-competitive firms

out of the marketplace, or inhibits their entry into it, potentially reducing options

---

[6] Statements in the Graves Amendment's legislative history suggest that its proponents indeed perceived vicarious liability as a burden on consumers, and as reducing the number of firms able to compete in the rental car market. See 151 Cong. Rec. H1034-01 at *H1200 (Statement of Rep. Graves) (stating that vicarious liability costs consumers $100 million annually and drives small firms out of business); see also 151 Cong. Rec. S5433-03 (Statement of Sen. Santorum) (similar). We would reach the same result in the absence of such statements.

22

for consumers. We do not know with any certainty the incidence or effect of these costs, and we do not have to know. It is enough that Congress rationally could have perceived a connection between permissible ends, namely increasing competition and lowering prices in the rental car market, and the means it chose to effectuate them, preempting vicarious liability suits.

In sum, the Graves Amendment preempts the tort claims on appeal, and is within the boundaries of Congressional power in so doing. Accordingly, the claims cannot proceed. The district court's judgment is

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: 
Deputy Clerk
Atlanta, Georgia

23

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

For rules and forms visit
www.ca11.uscourts.gov

September 17, 2008

Sheryl L. Loesch
Clerk, U.S. District Court
207 NW 2ND ST RM 337
OCALA FL 34475-6666

**Appeal Number: 07-12235-JJ**
Case Style: Maria D. Garcia v. Vanguard Car Rental
District Court Number: 06-00220 CV-OC-10-GRJ

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
Original Exhibits, consisting of: two volumes
Original record on appeal or review, consisting of: two volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)